SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
STEPHEN S. KORNICZKY, Cal Bar No. 135532
skorniczky@sheppard.com
MARTIN R. BADER, Cal Bar No. 222865
mbader@sheppard.com
JESSE A. SALEN, Cal Bar No. 292043
jsalen@sheppard.com
MICHAEL J. HOPKINS, Cal Bar No. 326621
mhopkins@sheppard.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:  858.720.8900

JONATHAN DEFOSSE (*pro hac vice* to be filed)
jdefosse@sheppard.com
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C. 20006-6801
Telephone:  202.747.1900

Attorneys for Belkin International, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BELKIN INTERNATIONAL, INC., | Case No. |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| SUPERIOR COMMUNICATIONS, INC., | |
| Defendant. | |

1    Plaintiff Belkin International, Inc. ("Belkin" or "Plaintiff"), by and through its

2 undersigned counsel, files this Complaint and demand for a jury trial seeking relief

3 for patent infringement by Defendant Superior Communications, Inc. ("Superior" or

4 "Defendant"), stating as follows:

5                    **NATURE OF THE ACTION**

6    1.    This action arises from Superior's unlawful infringement of the

7 following United States patents owned by Belkin: U.S. Patent Nos. 10,675,817 ("the

8 '817 patent"); 10,782,746 ("the '746 patent"); and 11,772,320 ("the '320 patent")

9 (collectively, the "Asserted Patents"), under the patent laws of the United States, 35

10 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

11                      **THE PARTIES**

12    2.    Belkin is a Delaware corporation with its headquarters located at 555

13 South Aviation Boulevard, Suite 180, El Segundo, California 90245-4852.

14    3.    Superior is a California limited liability company, with its headquarters

15 and distribution center located at 5027 Irwindale Avenue, Suite 900, Irwindale,

16 California 91706. Superior has an additional distribution center located at 4821 4th

17 Street, Baldwin Park, California 91706. Superior is authorized to do business in

18 California, does business in this District, and may be served with process through its

19 registered agent for service of process, Jannifer Ju, 5027 Irwindale Avenue, Suite

20 900 Irwindale, CA 91706.

21                  **JURISDICTION AND VENUE**

22    4.    This is an action for patent infringement arising under the patent laws

23 of the United States, 35 U.S.C. § 1 *et seq.*, including but not limited to 35 U.S.C. §§

24 271 and 281.

25    5.    This Court has subject matter jurisdiction over this action under 28

26 U.S.C. §§ 1331 and 1338 because this Court has exclusive jurisdiction over claims

27 arising under the patent laws of the United States.

28

-1-                                    COMPLAINT FOR PATENT
                                       INFRINGEMENT

6.     This Court has personal jurisdiction over Superior because Superior is organized and existing under the laws of the State of California. Superior is headquartered and has a principal place of business in this District. Additionally, Superior's purposeful, systematic, and continuous contacts with California, and particularly the Central District of California, give rise to personal jurisdiction. Superior is also subject to personal jurisdiction at least because it markets, distributes, offers for sale, and/or sells infringing products throughout the United States from, and including in, this District. Further, Superior purposefully avails itself, and enjoys the benefits, of the laws of California and it has sufficient minimum contacts with the State of California and this District. This action arises out of Superior's contacts with the State of California and exercising jurisdiction over Superior would be reasonable and comport with the requirements of the Due Process Clause of the United States Constitution.

7.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 28 U.S.C. § 1400(b) at least because Superior resides in this District and because Superior has committed acts of infringement in this District while also maintaining a regular and established place of business in this District.

## BACKGROUND

8.     Belkin is an American consumer electronics company that was founded in 1983 by the company's current Executive Chairman, Chet Pipkin. Mr. Pipkin started the company in his parents' garage, while attending UCLA and working in a local computer store. Mr. Pipkin assembled his first products at his parents' dining room table, using a soldering iron and cable cutters. Belkin sold $180,000 in its first full year of operations, and the company's sales have increased each year thereafter.

9.     Today, Belkin has become a leading global technology company, partnering with many other leading companies to provide their customers with high-quality wireless accessories. Belkin's products are designed with simplicity,

COMPLAINT FOR PATENT INFRINGEMENT

elegance, efficiency and precision in mind, and are engineered with multiple purposes, ergonomic assessments and sustainable materials.

10.     The technology and products at issue in this case relate to advanced systems and methods for applying protective overlays (colloquially referred to as "screen protectors") onto electronic devices, such as mobile phones, tablets, smart watches, and other touch-enabled electronics.

11.     As touch-enabled electronic devices have grown more integral to daily life, consumer demand has increased for solutions to protect the screens of those devices, with consumers seeking screen protectors that are effective, easy to install, precisely aligned, and reliable in real-world conditions.

12.     A core technical challenge in this industry is achieving a bubble-free, dust-free, and accurately-aligned installation, without requiring either professional intervention or technical expertise from the consumer.

13.     Belkin has invested millions of dollars into research, development, design, and engineering to address these challenges. As a result of these investments, Belkin has pioneered the development of both screen protectors and overlay applicator trays—alignment systems that allow consumers to quickly and accurately apply screen protectors to their electronic devices without dust or bubbles.

14.     To protect its valuable intellectual property, Belkin has secured numerous patents, including the Asserted Patents. The inventions claimed in these patents collectively and individually represent significant advancements in the art of device screen protection and overlay installation. That is, the Asserted Patents include novel combinations of precisely-designed cradle slots, alignment mechanisms, overlay/adhesive stacks, and installation methods focused on consistent and accurate first-time placement of screen protectors.

COMPLAINT FOR PATENT
INFRINGEMENT

1

## OVERVIEW OF THE ASSERTED PATENTS

2

**The '817 Patent**

3      15.     The United States Patent and Trademark Office the ("USPTO"), after

4   full and fair examination, duly and legally issued the '817 patent, titled "Overlay

5   Applicator Tray and Method of Using the Same," to inventors Eric A MacDonald,

6   John Wadsworth, Mitchell Suckle and David A. Kleeman, on September 6, 2020. A

7   copy of the '817 patent is attached as Exhibit A.

8      16.     The claims of the '817 patent are valid, enforceable, and currently in

9   full force and effect. Belkin holds all right, title, and interest in the '817 patent, with

10   full rights to enforce the same.

11      17.     The '817 patent is generally directed to overlay applicator trays and

12   associated methods for applying screen protectors to electronic devices such as

13   mobile phones, tablets, and smart watches. Figure 3 of the '817 patent provides an

14   exemplary embodiment of one such overlay applicator tray:

15

16



17

18

19

20

21

22

23

24

25

FIG. 3

26

27

28      18.     Claim 1 of the '817 patent reads as follows:

-4-

1.  An overlay applicator tray, comprising:

an overlay applicator, wherein the overlay applicator includes an overlay layer, an adhesive release liner, and one or more pull tabs, wherein the overlay layer includes a top side and a bottom side, wherein the bottom side is configured to be adhered to a screen of an electronic device, wherein the adhesive release liner is removably attached to the bottom side of the overlay layer, and wherein a first pull tab of the one or more pull tabs is coupled to the adhesive release liner and is configured to be pulled to remove the adhesive release liner from the bottom side of the overlay layer and expose an adhesive of the overlay layer;

a cradle, wherein the cradle includes a device slot corresponding to a recess in the cradle that is sized and shaped to securely hold the electronic device in the cradle, wherein the cradle includes an attachment surface for coupling the overlay applicator to the cradle, wherein the cradle includes a pull tab recess comprising an inclined surface corresponding to a recessed surface of the cradle having a depth below a top surface of the cradle, wherein the pull tab recess is positioned in the cradle at a position to align with at least one of the one or more pull tabs, and wherein the cradle, including the top surface, the device slot, the pull tab recess, and the attachment surface, comprises a unitary body; and

an alignment piece coupling the cradle to the overlay applicator, wherein the alignment piece includes a cradle attachment portion for coupling to the attachment surface and an overlay attachment portion for coupling to the overlay applicator,

COMPLAINT FOR PATENT
INFRINGEMENT

wherein the alignment piece aligns the overlay layer of the overlay applicator with the screen as the overlay layer is applied to the screen when the electronic device is securely held in the device slot.

19.  Claim 10 of the '817 patent recites:

10.  A method, comprising:

inserting an electronic device into a device slot of a cradle of an overlay applicator tray, wherein the overlay applicator tray includes:

an overlay applicator, wherein the overlay applicator includes an overlay layer and an adhesive release liner and one or more pull tabs, wherein the overlay layer includes a top side and a bottom side, wherein the bottom side is configured to be adhered to a screen of the electronic device, wherein the adhesive release liner is removably attached to the bottom side of the overlay layer, and wherein a first pull tab of the one or more pull tabs is coupled to the adhesive release liner and is configured to be pulled to remove the adhesive release liner from the bottom side of the overlay layer and expose an adhesive of the overlay layer,

the cradle, wherein the cradle includes the device slot corresponding to a recess in the cradle that is sized and shaped to securely hold the electronic device in the cradle, wherein the cradle includes an attachment surface for coupling the overlay applicator to the cradle, wherein the cradle includes a pull tab recess comprising an inclined surface corresponding to a recessed surface of the cradle having a depth below a top surface of the cradle, wherein

the pull tab recess is positioned in the cradle at a position to
align with at least one of the one or more pull tabs, and
wherein the cradle, including the top surface, the device
slot, the pull tab recess, and the attachment surface,
comprises a unitary body, and

an alignment piece coupling the cradle to the overlay
applicator, wherein the alignment piece includes a cradle
attachment portion for coupling to the attachment surface
and an overlay attachment portion for coupling to the
overlay applicator, wherein the alignment piece aligns the
overlay layer of the overlay applicator with the screen as the
overlay layer is applied to the screen when the electronic
device is securely held in the device slot;

removing the adhesive release liner from the overlay layer
using the first pull tab; and

rotating the overlay applicator with respect to the cradle to
apply the overlay layer of the overlay applicator to the
screen of the electronic device, wherein rotating maintains
coupling of the cradle to the overlay applicator as the
overlay layer is applied to the screen.

20.     The overlay applicator tray and method of using the same of the '817
patent represent a significant improvement over the prior art. The invention of the
'817 patent provided a novel and nonobvious solution at the time of the invention.

**The '746 Patent**

21.     The USPTO, after full and fair examination, duly and legally issued the
'746 patent, titled "Overlay for Electronic Device," to inventors David A. Kleeman,

1  Vijendra Nalwad, Kazuyoshi Raijin Otani, and John F. Wadsworth, on September
2  22, 2020. A copy of the '746 patent is attached as Exhibit B.

3       22.    The claims of the '746 patent are valid, enforceable, and currently in
4  full force and effect. Belkin holds all right, title, and interest in the '746 patent, with
5  full rights to enforce the same.

6       23.    The '746 patent is generally directed to screen protectors for electronic
7  devices such as mobile phones, tablets, and smartwatches, and application systems
8  for the same. For example, the '746 patent teaches a single-use configuration of a
9  screen protector where, after installation, removing the screen protector causes at
10  least part of the adhesive component to detach, discouraging reuse and preserving
11  optical clarity. Figures 97-99 of the '746 patent provide an exemplary embodiment
12  of the screen protector:

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR PATENT
INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20    24.    Claim 1 of the '746 patent recites:

21        1.  An apparatus comprising:

22            an overlay comprising a top side and a bottom side, the overlay

23                comprising dimensions coterminous with a screen of an electronic

24                device, and the overlay comprising at least one of glass, tempered

25                glass, silica-infused plastic, or polyethylene terephthalate; and

26        an adhesive component comprising a top side and a bottom side, the

27            top side of the adhesive component being adhered to the bottom

28            side of the overlay, the adhesive component being optically

-9-

clear, the adhesive component being configured to adhere the
bottom side of the overlay to the screen of the electronic device
in a single-use application of the overlay by adhering the bottom
side of the adhesive component to the screen of the electronic
device, and the apparatus being configured such that a display of
the screen of the electronic device is viewable through the
overlay and the adhesive component without noticeable
distortion when the bottom side of the adhesive component is
adhered to the screen of the electronic device,

wherein: the apparatus is configured such that, while the overlay is
being removed from being adhered to the screen of the electronic
device after the single-use application of the overlay, at least a
portion of the adhesive component is automatically being
detached from at least a portion of the overlay.

25.    Claim 11 of the '746 patent recites:

11.  A method comprising:

providing an overlay, the overlay comprising a top side and a
bottom side, the overlay comprising dimensions coterminous
with a screen of an electronic device, and the overlay
comprising at least one of glass, tempered glass, silica-infused
plastic, or polyethylene terephthalate; and

providing an adhesive component, the adhesive component
comprising a top side and a bottom side, the top side of the
adhesive component being adhered to the bottom side of the
overlay, the adhesive component being optically clear, the
adhesive component being configured to adhere the bottom
side of the overlay to the screen of the electronic device in a
single-use application of the overlay by adhering the bottom

side of the adhesive component to the screen of the electronic device, and the apparatus being configured such that a display of the screen of the electronic device is viewable through the overlay and the adhesive component without noticeable distortion when the bottom side of the adhesive component is adhered to the screen of the electronic device,

wherein: the overlay and the adhesive component are configured such that, while the overlay is being removed from being adhered to the screen of the electronic device after the single-use application of the overlay, at least a portion of the adhesive component is automatically being detached from at least a portion of the overlay.

26.     The screen protector and method of using the same of the '746 patent represents a significant improvement over the prior art. The invention of the '746 patent provided a novel and nonobvious solution at the time of the invention.

**The '320 Patent**

27.     The USPTO, after full and fair examination, duly and legally issued the '320 patent, titled "Overlay Applicator Tray and Method of Using the Same," to inventors Eric A MacDonald, John Wadsworth, Mitchell Suckle and David A. Kleeman, on October 23, 2023. A copy of the '320 patent is attached as Exhibit C.

28.     The claims of the '320 patent are valid, enforceable, and currently in full force and effect. Belkin holds all right, title, and interest in the '320 patent, with full rights to enforce the same.

-11-

COMPLAINT FOR PATENT INFRINGEMENT

29.    The '320 patent is generally directed to overlay applicator trays and associated methods for applying screen protectors to electronic devices, such as mobile phone, tablets, and smart watches. Figure 92 of the '320 patent illustrates an exemplary embodiment of the overlay applicator:



30.    Claim 1 of the '320 patent recites:

1. An overlay applicator tray comprising:

a cradle comprising a device slot, wherein the device slot is configured to securely hold an electronic device in the cradle;

an overlay applicator, wherein the overlay applicator comprises an overlay layer and an adhesive release liner, the overlay layer comprises a top side and a bottom side, the bottom side is configured to be adhered to a screen of the electronic device, and

-12-

1      the adhesive release liner is removably attached to the bottom

2      side of the overlay layer;

3      an alignment piece coupling the cradle to the overlay applicator,

4      wherein the alignment piece aligns the overlay layer of the

5      overlay applicator with the screen as the overlay layer is applied

6      to the screen when the electronic device is securely held in the

7      device slot; and

8      a first pull tab on the adhesive release liner, wherein the first pull tab

9      is configured to be pulled to remove the adhesive release liner

10      from the bottom side of the overlay layer and expose an adhesive

11      of the overlay layer,

12      wherein: the cradle further comprises a tab surface that is recessed

13      below a top surface of the cradle and is configured to receive at

14      least one pull tab of the overlay applicator that extends beyond a

15      first end of the overlay layer opposite a second end of the overlay

16      layer from which the alignment piece extends.

17    31.    Claim 10 of the '320 patent recites:

18      10.  A method comprising:

19      inserting an electronic device into a device slot of a cradle of an

20      overlay applicator tray, wherein the device slot is configured to

21      securely hold the electronic device in the cradle, and the

22      overlay applicator tray comprises an overlay applicator and an

23      alignment piece coupling the cradle to the overlay applicator;

24      and

25      rotating the overlay applicator with respect to the cradle to apply

26      an overlay layer of the overlay applicator to a screen of the

27      electronic device, wherein the overlay layer comprises a top

28      side and a bottom side, the overlay applicator further comprises

COMPLAINT FOR PATENT
INFRINGEMENT

an adhesive release liner removably attached to the bottom side of the overlay layer, the bottom side is configured to be adhered to the screen, and the alignment piece aligns the overlay layer with the screen and maintains the coupling of the cradle to the overlay applicator as the overlay layer is applied to the screen,

wherein:

the adhesive release liner is removed from the bottom side of the overlay layer using a first pull tab on the adhesive release liner;

the first pull tab is configured to be pulled to remove the adhesive release liner from the bottom side of the overlay layer and expose an adhesive of the overlay layer; and

the cradle further comprises a tab surface that is recessed below a top surface of the cradle and is configured to receive at least one pull tab of the overlay applicator that extends beyond a first end of the overlay layer opposite a second end of the overlay layer from which the alignment piece extends.

32.    The overlay applicator tray and method of using the same of the '320 patent represent a significant improvement over the prior art. The invention of the '320 patent provided a novel and nonobvious solution at the time of the invention.

## SUPERIOR'S INFRINGEMENT AND ACCUSED PRODUCTS

33.    Superior has infringed and continues to infringe, directly and indirectly, at least one claim of each Asserted Patent.

34.    Superior is a manufacturer and distributor of accessories for electronic devices. On information and belief, Superior designs, develops, manufactures, and

-14-

sells its mobile accessories to wireless carriers, dealers, OEMs and big box retailers, including Amazon, Target, and Walmart.

35.    Superior manufactures, imports, sells, and/or offers to sell screen protectors and applicator trays that infringe the Asserted Patents (collectively, the "Accused Products"). Attached hereto as Exhibit D is a list of exemplary of Accused Products.

36.    On information and belief, Superior sells its Accused Products under its PureGear brand. The Accused Products are designed to be used with Apple iPhones, iPads and Apple Watches; Samsung Galaxy phones and tablets; Google Pixel phones; LG ThinkQ phones; Motorola Moto and One phones; and Nokia 8 V phones, among others. The Accused Products are designed and specially made and adapted to infringe claims of the Asserted Patents and to embody a material part of the claimed inventions.

## COUNT I

## INFRINGEMENT OF THE '817 PATENT

37.    Belkin repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

38.    Belkin is the assignee of and owns all right, title, and interest to the '817 patent.

39.    Superior has directly infringed, and continues to directly infringe, at least claims 1 and 10 of the '817 patent by making, using, offering to sell, selling, and/or importing into the United States the Accused Products. A chart showing infringement of claims 1 and 10 by a representative Accused Product is attached as Exhibit E.

40.    Superior also indirectly infringes at least claims 1 and 10 of the '817 patent by actively encouraging others to make, use, offer to sell, or sell the Accused Products in the United States, including through provision of instructions, marketing

-15-                                    COMPLAINT FOR PATENT
                                                INFRINGEMENT

materials, and technical support provided to customers and users in violation of 35 U.S.C. § 271(b).

41.    Superior also contributes to the infringement of at least claims 1 and 10 of the '817 patent in violation of 35 U.S.C. § 271(c) by offering to sell, selling within the United States, or importing into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in the infringement of at least claims 1 and 10, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

42.    Superior has had notice of the '817 patent and its infringement based at least on the filing of this Complaint.

43.    On information and belief, Superior also had knowledge of the '817 patent at least as early as October 2017 because Superior cited the publication of the application for the '817 patent (U.S. Pub. No. 2017/0001367) in an Information Disclosure Statement submitted to the USPTO in October 2017 during prosecution of Superior's U.S. Patent No. 9,931,823. Superior subsequently cited the publication of the application for the '817 patent in Information Disclosure Statements during the prosecution of four other patents—U.S. Patent Nos. 10,021,818; 10,555,445; 11,155,067; and 11,357,143. Further, the publication of the application for the '817 patent was identified and considered during the prosecution of at least Superior's U.S. Patent No. 10,399,315.

44.    Despite having knowledge of the '817 patent and its infringement, Superior has continued its infringement. Superior's continuing infringement constitutes willful infringement, entitling Belkin to enhanced damages under 35 U.S.C. § 284.

45.    As a result of Superior's infringing conduct, Belkin has suffered and continues to suffer irreparable harm and damages in an amount to be determined at

trial, but not less than a reasonable royalty. Belkin is also entitled to injunctive relief to prevent further acts of infringement, as well as enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs pursuant to 35 U.S.C. § 285 due to the exceptional nature of this case.

## COUNT II

## INFRINGEMENT OF THE '746 PATENT

46.    Belkin repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

47.    Belkin is the assignee of and owns all right, title, and interest to the '746 patent.

48.    Superior has directly infringed, and continues to directly infringe, at least claims 1 and 11 of the '746 patent by making, using, offering to sell, selling, and/or importing into the United States the Accused Products. A chart showing infringement of claims 1 and 11 by a representative Accused Product is attached as Exhibit F.

49.    Superior also indirectly infringes at least claims 1 and 11 of the '746 patent by actively encouraging others to make, use, offer to sell, or sell the Accused Products in the United States, including through provision of instructions, marketing materials, and technical support provided to customers and users in violation of 35 U.S.C. § 271(b).

50.    Superior also contributes to the infringement of at least claims 1 and 11 of the '746 patent in violation of 35 U.S.C. § 271(c) by offering to sell, selling within the United States, or importing into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in the infringement of at least claims 1 and 11, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

COMPLAINT FOR PATENT
INFRINGEMENT

51.     Superior has had notice of the '746 patent and its infringement based at least on the filing of this Complaint.

52.     On information and belief, Superior also had knowledge of the '746 patent at least as early as July 2021 because the publication of the application for the '746 patent (U.S. Pub. No. 2017/0253014) was included in the Examiner's search strategy/results entry during prosecution of Superior's U.S. Patent No. 11,338,500.

53.     Despite having knowledge of the '746 patent and its infringement, Superior has continued its infringement. Superior's continuing infringement constitutes willful infringement, entitling Belkin to enhanced damages under 35 U.S.C. § 284.

54.     As a result of Superior's infringing conduct, Belkin has suffered and continues to suffer irreparable harm and damages in an amount to be determined at trial, but not less than a reasonable royalty. Belkin is also entitled to injunctive relief to prevent further acts of infringement, as well as enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs pursuant to 35 U.S.C. § 285 due to the exceptional nature of this case.

## COUNT III
## INFRINGEMENT OF THE '320 PATENT

55.     Belkin repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

56.     Belkin is the assignee of and owns all right, title, and interest to the '320 patent.

57.     Superior has directly infringed, and continues to directly infringe, at least claims 1 and 10 of the '320 patent by making, using, offering to sell, selling, and/or importing into the United States the Accused Products. A chart showing infringement of claims 1 and 10 by a representative Accused Product is attached as Exhibit G.

COMPLAINT FOR PATENT
INFRINGEMENT

58.     Superior also indirectly infringes at least claims 1 and 10 of the '320 patent by actively encouraging others to make, use, offer to sell, or sell the Accused Products in the United States, including through provision of instructions, marketing materials, and technical support provided to customers and users in violation of 35 U.S.C. § 271(b).

59.     Superior also contributes to the infringement of at least claims 1 and 10 of the '320 patent in violation of 35 U.S.C. § 271(c) by offering to sell, selling within the United States, or importing into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in the infringement of at least claims 1 and 10, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

60.     Superior has had notice of the '320 patent and its infringement based at least on the filing of this Complaint.

61.     On information and belief, Superior also had knowledge of the '320 patent no later than October 2017—the date on which Superior identified the application for the '817 patent on an Information Disclosure Statement filed with the USPTO—because the '320 patent is related to the '817 patent.

62.     Despite having knowledge of the '320 patent and its infringement, Superior has continued its infringement. Superior's continuing infringement constitutes willful infringement, entitling Belkin to enhanced damages under 35 U.S.C. § 284.

63.     As a result of Superior's infringing conduct, Belkin has suffered and continues to suffer irreparable harm and damages in an amount to be determined at trial, but not less than a reasonable royalty. Belkin is also entitled to injunctive relief to prevent further acts of infringement, as well as enhanced damages under 35

COMPLAINT FOR PATENT
INFRINGEMENT

U.S.C. § 284, and attorneys' fees and costs pursuant to 35 U.S.C. § 285 due to the exceptional nature of this case.

## **PRAYER FOR RELIEF**

Accordingly, Belkin respectfully prays for relief as follows:

A.    A judgment in favor of Belkin that Superior has directly and willfully infringed, actively induced infringement of, and/or contributorily infringed one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(a), (b), and/or (c);

B.    An order and judgment preliminarily and permanently enjoining Superior, its employees, officers, directors, agents, servants, affiliates, divisions, branches, subsidiaries, parents, and all others acting in active concert of the foregoing persons or entities from further acts of infringement of the Asserted Patents;

C.    A judgment awarding Belkin damages in an amount adequate to compensate Belkin for Superior's infringement, but in no event less than a reasonable royalty, including up to treble damages for willful infringement, and together with interest thereon;

D.    A judgment in favor of Belkin that this is an exceptional case under 35 U.S.C. § 285, and an award to Belkin of its costs, including its reasonable attorney fees and other expenses incurred in connection with this action;

E.    An award of prejudgment interest under 35 U.S.C. § 284 and post-judgment interest under 35 U.S.C. § 1961 on all damages awarded; and

F.    Such other costs and further relief as the Court may deem just and proper.

COMPLAINT FOR PATENT INFRINGEMENT

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Belkin

3   respectfully demands a trial by jury on all triable issues.

4

5   Dated: March 5, 2026              Respectfully submitted,

6

7                                     _/s/ Stephen S. Korniczky_
                                      Stephen S. Korniczky
8                                     Martin R. Bader
9                                     Jesse A. Salen
                                      Michael Hopkins
10                                    **SHEPPARD, MULLIN,  RICHTER &**
11                                    **HAMPTON LLP**
                                      12275 El Camino Real, Suite 100
12                                    San Diego, California 92130
13                                    Telephone: (858) 720-8900
                                      Facsimile:  (858) 509-3691
14                                    E-mail:
15                                    LegalTm-Bel-Sup@sheppardmullin.com

16
                                      Jonathan DeFosse (_pro hac vice_ to be filed)
17                                    **SHEPPARD, MULLIN, RICHTER &**
                                      **HAMPTON LLP**
18                                    2099 Pennsylvania Avenue, N.W.
19                                    Suite 100
                                      Washington, D.C. 20006-6801
20                                    Telephone: (202) 747-1900
21                                    Facsimile:  (202)747-1901

22

23

24

25

26

27

28

                                      -21-                    COMPLAINT FOR PATENT
                                                                      INFRINGEMENT